

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **OTIS C. GILLIAM**<br>**Appellant** | **CIVIL ACTION**<br>**NO. 05-1530** |
| **VERSUS** | |
| **JO ANNE B. BARNHART**<br>**COMMISSIONER OF SOCIAL SECURITY**<br>**Appellee** | **JUDGE DEE D. DRELL**<br>**MAGISTRATE JUDGE JAMES D. KIRK** |

<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Otis C. Gilliam ("Gilliam") filed an application for Supplemental Security Income benefits ("SSI") on December 11, 2003, (R. 11), alleging an inability to perform relevant or other substantial gainful activity due to chronic back and leg pain, depression, hemorrhoids and thoughts of violence. (R. 12, 80). The claim was initially denied and Gilliam timely filed a request for a hearing before a Federal Administrative Law Judge ("ALJ"). (R. 11).

Administrative Law Judge Lawrence T. Ragona ("ALJ Ragona") held a hearing on April 13, 2005. Gilliam, who was unrepresented during the hearing, appeared and testified as did vocational expert, Charles E. Smith. (R. 11).

ALJ Ragona issued a decision on May 18, 2005 denying benefits. (R. 11-19). Gilliam filed a request for review of that decision on May 31, 2005 (R. 6-7). The Appeals Council declined review of the

ALJ's decision; thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). (R. 3-5).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

At the time of the administrative hearing, Gilliam was 45 years old and lived with his wife and two children in Leesville, Louisiana. (R. 181). Gilliam testified he completed the tenth (10th) grade in regular classes, but he could not read well. (R. 182). He further testified he had not worked since he was involved in an automobile accident in 1988 which resulted in a broken leg, back problems and the onset of his disability. (R. 184). Gilliam testified that his mobility was limited in that he could only walk to the mailbox and back, could lift a maximum of ten pounds and

could sit about ten or fifteen minutes. (R. 185). Gilliam further advised that he was not responsible for household bills or chores and did not socialize outside of the household. (R. 190). The only medication Gilliam took to control his physical pain was Soma.(R. 186).

In addition to his physical problems, Gilliam stated he had a history of depression for which he was treated. However, he no longer sought medical attention from the Leesville Mental Health Clinic because he could obtain his medication from his general practitioner. (R. 190). In addition to his depression, Gilliam advised he had anger issues; however, these anger issues eased over the years. (R. 186-187).

ALJ Ragona found Gilliam had not engaged in substantial gainful activity since the alleged onset of the disability; had no past relevant work history; and, was a "younger individual" with a "limited education". (R. 18-19). Additionally, he found Gilliam's degenerative disk disease of the lumbar spine, depression and history of alcohol abuse were "severe"; however, the "severe" impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (R. 18). ALJ Ragona also found Gilliam's testimony regarding his limitations to be less than credible and found Gilliam could lift and carry twenty pounds occasionally and ten pounds frequently, could stand/walk six hours in an eight hour day and was limited to simple one or two

-3-

step job instructions. ALJ Ragona determined that Gilliam had the residual functional capacity to perform a significant range of light work and could perform several jobs which existed in significant numbers in the national economy. (R. 17,19).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is

for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

ISSUES

Gilliam raised the following issues for appellate review:

1. The ALJ denied plaintiff due process of law because plaintiff was not properly advised of his right to counsel and did not knowingly waive that right;

2. The ALJ improperly rejected the residual functional capacity assessment completed under the supervision of and/or approved by the state agency physician;

3. The ALJ erred as a matter of law by positing a defective hypothetical question to the vocational expert;

4. Because the ALJ failed to fully and fairly develop the facts for the unrepresented plaintiff, substantial evidence fails to support a finding that plaintiff possesses the general education development necessary to perform the alternate occupations listed by the vocational expert.

<u>Due Process</u>

A claimant has a statutory right to counsel at a Social Security hearing, and the claimant must be provided notice of that

right. Clark v. Schweiker, 652 F.2d 399, 403 (5th Cir. 1981), citing 42 U.S.C. §406 and 20 C.F.R. §404:971. The notice should not only inform the claimant of this right to representation by an attorney but it should also advise of the type of assistance an attorney could provide during the hearing, that there is a possibility claimant could qualify for free representation, that claimant could also acquire counsel who would only receive compensation if claimant prevailed and that in no event could an attorney's fee exceed 25% of the recovery of the amount due up to the date of the award. Clark, 652 F.2d at 403; Gullett v. Chater, 973 F.Supp. 614, 620 (E.D. Tex. 1997).

Generally, without adequate notice, a claimant cannot be held to have validly waived his right to counsel. However, a claimant who does not validly waive his right to counsel must prove that he was prejudiced thereby in order to merit reversal of the ALJ's decision. Brock v. Cater, 84 F.3d 726, 728 (5th Cir. 1996), citing Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984).

Gilliam acknowledges he executed a waiver of his right to counsel; however, he contends that the waiver was invalid because ALJ Ragona did not provide adequate notice during the hearing. The record reveals that ALJ Ragona reminded Gilliam of the notice regarding the right to counsel and questioned if he was prepared to proceed without counsel.

ALJ:    On the Notice of Hearing, we sent you we told you

|        |                                                                                 |
|--------|---------------------------------------------------------------------------------|
|        | you had a right to an attorney representative.                                  |
| CLMT:  | Sure.                                                                           |
| ALJ:   | You've come here by yourself?                                                   |
| CLMT:  | Yes, sir.                                                                       |
| ALJ:   | Are you going to be able to tell me what you want to tell me without the aid of a representative? |
| CLMT:  | Yes, sir, I am.                                                                 |
| ALJ:   | Do you want to go ahead with the hearing?                                       |
| CLMT:  | Yes, sir.                                                                       |

(R. 178-179).

The Commissioner contends ALJ Ragona owed Gilliam nothing more than the reminder of his right to counsel and cites the case of Castillo v. Barnhart, 325 F.3d 550 (5th Cir. 2003) in support. In Castillo, the Fifth Circuit held that four written notices, all of which properly notified claimant of her right to counsel (how an attorney could assist her case, the possibility of free representation and the fact attorney's fees could not exceed 25% of her past due benefits) sufficiently informed claimant of her right. Therefore, it was not necessary for the ALJ to provide Ms. Castillo with more than a reminder of her right to counsel. Id.

In the instant matter, the Commissioner references three notices; one which was dated May 13, 2004 (R. 21-24), one dated approximately May 18, 2004 (R. 25-26) and the third dated May 28, 2004 (R. 27-31). A review of the notices reveals that the May 13,

2004 notice fails to advise Gilliam how an attorney could aid him with the matter. The May 18, 2004 notice entitled "Request for Hearing by Administrative Law Judge" simply states "[y]ou have a right to be represented at the hearing. If you are not represented but would like to be, your Social Security office will give you a list of legal referral and service organizations." Finally, all three of the notices fail to advise claimant that attorney's fees are limited to 25% of his past due benefits. Accordingly, none of the notices constitutes an effective notice of the right to counsel.

Because neither the notices nor ALJ Ragona's statement at the hearing adequately advised Gilliam of his right to counsel, he cannot be said to have validly waived that right. However, the invalidity of the waiver does not merit reversal unless Gilliam was prejudiced as a result thereof.

Gilliam contends he was prejudiced because the record was not fully developed with respect to his educational abilities. He further argues that this prevented him from having the opportunity to cross examine the vocational expert and it resulted in an erroneous determination that he possessed the General Educational Development Necessary to perform the alternate job occupations listed by the vocational expert.

The ALJ's obligation to develop a full and fair record rises to a special duty when an unrepresented claimant, unfamiliar with

the hearing procedure, appears before him. This duty requires the ALJ to scrupulously and conscientiously probe into, inquire and explore for all relevant facts. Kane v. Heckler, 731 F.2d 1216, 1219-20 (5th Cir. 1984), and cases cited therein. Also, Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991); James v. Bowen, 793 F.2d 702, 704 (5th Cir. 1981). The failure of the ALJ to develop an adequate record is not, however, ground for reversal per se. As in the case of hearing held without waiver of right to counsel, the claimant must, in addition, show that he was prejudiced as a result of a scanty hearing. He must show that, had the ALJ done his duty, he could and would have adduced evidence that might have altered the result.

The duty does not exact a lengthy hearing or protracted inquiry. It does exact a careful effort to make a complete record. Kane v. Heckler, 731 F.2d 1216, 1219-1220 (5th Cir. 1984), and cases cited therein. Also, Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996); Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991); James v. Bowen, 793 F.2d 702, 704 (5th Cir. 1986). The ALJ has the duty to develop the relevant facts so that he can fully and fairly evaluate the case. James, 793 F.2d at 705. The court will reverse the decision of the ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. Brock, 84 F.3d at 728. Also, James, 739 F.2d

at 704.

Based upon Gilliam's testimony, ALJ Ragona found that Gilliam completed the 10th grade in regular classes, and, therefore, has a "limited education" as set forth in 20 C.F.R. §404.1564. However, 20 C.F.R. §404.1564(b) states in part:

> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairments and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began or un-used skills and knowledge that were part of your formal education, may no longer be meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities.

A thorough review of the record revealed documentation which called Gilliam's educational abilities into questions. Though Gilliam advised that he completed the tenth grade, he also testified that he did not read well. This is supported by the report issued by James W. Quillin, Ph.D., who advised Gilliam's "reading recognition capacity...is measured at the third grade level." (R. 144).

In addition to Dr. Quillin's report, the record contains several other documents which raise questions regarding Gilliam's literacy. "Illiteracy" according to 20 C.F.R. §404.1564(b)(1) includes someone who "cannot read or write a simple message such as

instructions or inventory lists even though the person can sign his or her name." Several documents in the record were signed by Gilliam but were either partially or completely filled out by someone else. The most obvious example of this is the "Activities of Daily Living Form."

Margaret Reeves, Gilliam's wife, acknowledged on the form itself that she completed the form on his behalf. (R. 96). Additionally, a letter dated June 10, 2004 from the State of Louisiana Department of Health and Hospitals, Office of Mental Health, Leesville states: "Mr. Gilliam only completed the 10th grade. Even so, he is not able to read or write very well, other than to write his name. He was unable to complete this form and brought it for someone to help him fill it out. He has to have someone read and explain things to him."

Other documents which appear to be completed by someone other than Mr. Gilliam include the "Disability Report" which contains the handwriting of three different people. (R. 79-88). Furthermore, on the "Request for Hearing by Administrative Law Judge", Gilliam filled in his name in Item 1 and signed the document, but the remainder of the form was completed by someone else. (R. 25). On the "Application for Supplemental Security Income", Gilliam's wife signed her own name in the portion of the application asking for information about a spouse, (R. 48), and in Part II of the form regarding living arrangements, the response to question 15 is "Just

Margaret and Otis". This statement is in a different handwriting and is inconsistent with the manner in which one would answer a question about themself. (R. 50). It is also worth noting the differences between the "N/A" responses contained on the application to those obviously written by Gilliam on another Social Security questionnaire. (R. 66). Despite the several inferences in the record to Gilliam's inability to read, ALJ Ragona failed to probe into the issue during the hearing. As the issue of education was not properly considered, substantial evidence does not support the ALJ's decision that Gilliam has a "limited education" and can perform a significant range of light work.

Because substantial evidence does not support the conclusions of the ALJ and the Appeals Council, or the final decision of the Commissioner, the decision is incorrect as a matter of law. However, this does not entitle Gilliam to a decision in his favor based upon the existing record. The record is simply inconclusive as to Gilliam's level of education under 20 C.F.R. §404.1564. Therefore, Gilliam's case should be remanded to the Commissioner for further proceedings.

<u>Residual Functional Capacity</u>

Gilliam also argues ALJ Ragona should have accepted the Residual Functional Capacity Assessment ("Assessment") provided by Disability Determination Services since ALJ's must consider the findings of a State agency's medical consultants as opinion

evidence pursuant to 20 C.F.R. §404.1527(f)(2)(i). While both §404.1527(f)(2)(i) and 416.927(f)(2)(i) state ALJ's must consider findings of State agency medical consultants as opinion evidence, they first and foremost state that ALJ's are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologist. Therefore, regardless of who made the findings in the Assessment, ALJ Ragona was not bound to accept those findings.

Regardless of whether or not it was proper, the evidence supports ALJ Ragona's determination that the Assessment was completed by an examiner, not a medical consultant. The last page of the Assessment contains a line for the "Medical Consultant's Signature." However, when Debbie Shoalmire signed her name to the Assessment, she crossed out the words "Medical Consultant's." (R. 173). Additionally, Ms. Shoalmire's name and signature appear on the "Disability Determination and Transmittal" as the "Disability Examiner". (R. 20). Accordingly, Gilliam's argument lacks merit.

<u>Hypothetical Posed to Vocational Expert</u>

Gilliam argues that the hypothetical question posed to the vocational expert was defective because it did not specifically incorporate the severe impairments from which he suffered: degenerative disk disease of the lumbar spine, depression and a history of alcohol abuse.

A "severe" impairment is one which imposes more than a minimal

limitation on an individual's ability to perform basic work-related physical or mental activities. See 20 C.F.R. §404.1521. Thus, the term "impairments" refers to a claimant's ailments or disorders. Impairments *cause* functional limitations which affect the ability to work, and, because impairments vary in degree of severity from person to person they cause different degrees of functional limitations in each person.  Therefore, a hypothetical question should include the specific physical and/or mental functional limitations which affect  a claimant's ability to work, in order to tailor the question to the particular claimant, rather than merely state the claimant's impairments.  Boyd v. Apfel, 239 F.3d 398 (5th Cir. 2001).

Despite the fact the hypothetical question was not defective for the reasons set forth above, it may have failed to incorporate Gilliam's proper educational level.  Therefore, the Commissioner should examine the matter during future proceedings.

General Educational Development

Because the case must be remanded for further development as to the issue of Gilliam's education, it is unnecessary for the court to consider this argument as it relates directly to the issue to be examined upon remand.

Conclusion

Based on the foregoing discussion, IT IS ORDERED that Gilliam's appeal is GRANTED, the final decision of the Commissioner

is REVERSED AND VACATED, and the case is REMANDED for further proceedings consistent with the views expressed herein.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond too another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING AN APPEAL ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of March, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE